IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HECTOR AYALA                                    :
    Petitioner,

    v.                                          :     CIVIL ACTION
                                                     NO. 15-6720
MARK GARMAN; THE DISTRICT
ATTORNEY OF THE COUNTY OF          :
PHILADELPHIA; and, THE
ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA              :
    Respondents.

**MEMORANDUM**

Jones, II    J.                                                                June 9, 2017

    **I.  Introduction**

On July 9, 2009, Petitioner Hector Ayala was convicted in the Philadelphia County Court of Common Pleas of rape of a person less than 13 years of age, and other related charges. (No. CP-51-CR-00130666-2008; Trial Jr. vol. 1, July 09, 2009, 74-78.) On April 14, 2010, Petitioner was sentenced to an aggregate term of 22 to 44 years' imprisonment followed by 20 years' probation. (Ct. Com. Pl. Crim. Docket 7-9.) Petitioner now seeks habeas relief from his state court convictions. Pursuant to Local Civil Rule 72.1.IV(c), the matter was referred to United States Magistrate Judge Timothy R. Rice for a Report and Recommendation ("R&R"). Judge Rice issued an R&R denying Petitioner's request for relief and Petitioner filed objections thereto, which are presently pending before this Court. For the reasons set forth below, Petitioner's objections shall be overruled.

## II. History

### A. Factual Background

The following facts are supported by evidence presented at trial:

In 2002, a minor named M.R. was explained the religion of Santeria by Petitioner and M.R.'s mother, Maria Alfaro ("Maria"). (Trial Tr. vol. 1, 98-99, June 24, 2009.) Petitioner and Maria told M.R. that in Santeria, she had the power, through offerings, to protect her family. *Id.* M.R. was coerced by Petitioner and Maria to believe that as an offering, she should participate in a ritual where Petitioner would perform oral sex on M.R. for four consecutive days while lying alongside Maria. (Trial Tr. vol. 1, 98-104, June 24, 2009.) On the fifth day, Petitioner would have vaginal intercourse with M.R., without the knowledge of and outside the presence of Maria. (Trial Tr. vol. 1, 100, 109-112, June 24, 2009.)

Unbeknownst to Maria, between 2002 and 2008, Petitioner frequently called upon M.R. to continue the "ritual" of offerings and sexual activity. (Trial Tr. vol. 1, 126, June 24, 2009.) At some point during this timeframe, Petitioner developed a numeric code which represented different sexual acts. (Trial Tr. vol. 1, 126, June 24, 2009.) For example, the number five meant that Petitioner wanted to perform oral sex on M.R. and the number eight meant that Petitioner wanted M.R. to perform oral sex on him. (Trial Tr. vol. 1, 126, June 24, 2009.) Two friends of M.R—C.R. and C.S—corroborated this numeric system, as both testified at trial that they were coerced into the same sexual activity using a similar numeric code as was used with M.R. (Trial Tr. vol. 1, 160-188, June 30, 2009; Trial Jr. vol. 1, 183-217, July 01, 2009.) M.R. first notified an authority figure of the sexual relationship with Petitioner when she told her art teacher and school counselor, Miss Strange. (Trial Tr. vol. 1, 170-172, June 24, 2009.) Miss Strange contacted and placed M.R. with the proper authorities. (Trial Tr. vol. 1, 171-172, June 24, 2009.)

Shortly thereafter, M.R. spoke with Detective Officer Cheryl Monzo ("Officer Monzo") of the Lehigh Police Department Special Victims Unit. (Trial Jr. vol. 1, 171-173, June 24, 2009.) M.R. explained the extent of her relationship with Petitioner, which lasted from when M.R. was nine years old to when M.R. was fifteen years old. (Trial Tr. vol. 1, 168-191, June 24, 2009.) However, M.R. attempted to recant after realizing that she missed her mother, Maria. (Trial Tr. vol. 1, 186-188, June 24, 2009.) M.R. testified that Officer Monzo, the lead investigator on the case, did not believe M.R.'s recantation. (Trial Tr. vol. 1, 185, June 24, 2009.) M.R. eventually readopted her original allegations. (Trial Jr. vol. 1, 184-187, June 24, 2009.) Miss Strange similarly testified that she did not believe M.R.'s recantation and that it was normal for victims of child sexual abuse to recant after being sexually abused. (Trial Tr. vol. 1, 55-56, June 26, 2009.) M.R. was cross-examined and confronted about the inconsistency of her statements. (Trial Tr. vol. 1, 30, 34-38, 40-44, 52-58, 65-67, 76-86, 89-90, 115-116, June 25, 2009.)

During Officer Monzo's testimony, she read to the jury her interviews with M.R. and Maria. (Trial Tr. vol. 1, 37-42, 49-60, June 29, 2009.) These interviews revealed M.R.'s statement to Officer Monzo that the following individuals did not believe M.R. when she recanted: (1) Miss Strange; (2) M.R.'s then-boyfriend, Emmanuel Rodriguez; (3) his mother, Katherine Burgos; and, (4) Michelle Ludwig, the DHS social worker assigned to M.R.'s case. (Trial Tr. vol. 1, 58, June 29, 2009.) In Maria's interview, she confessed and corroborated M.R.'s account of the initial acts in which she was involved with Petitioner. (Trial Tr. vol. 1, 22-44, June 29, 2009.)[1]

At no point in the trial did Petitioner elect to testify. Petitioner presented a defense by using multiple witnesses, including Steven Galambos ("Agent Galambos"), Senior Special Agent

---

[1] As part of her subsequent defense, Maria testified that she falsely confessed to Officer Monzo. (Trial Jr. vol. 1, Jul 07, 2009, 50-51, 118.)

3

for the Department of Homeland Security, Immigration and Customs Enforcement. (Trial Tr. vol. 1, 39-41, July 06, 2009.) Petitioner attempted to offer Galambos as a fact and character witness. (Trial Tr. vol. 1, 33-38, July 06, 2009.) Petitioner also wished for Agent Galambos to testify that from 2004 to 2008, Petitioner worked with Agent Galambos as a confidential informant on 70 – 80 occasions. (Trial Tr. vol. 1, 36-38, July 06, 2009.) However, the trial judge limited Galambos' testimony to his personal knowledge of Petitioner over the years with regard to Petitioner's reputation in the community as a peaceful and law abiding individual (Trial Jr. vol. 1, 36, July 06, 2009.)

On July 9, 2009, a jury convicted Petitioner on all charges. (Trial Tr. vol. 1, 74-78, July 9, 2009.)

### B. Procedural Background

#### i. Direct and Collateral Appeals

Petitioner directly appealed his conviction, arguing that the trial court improperly precluded Agent Galambos from offering fact testimony. *Commonwealth v. Ayala*, No. 986 EDA 2010, at 7 (Pa. Super. Dec. 28, 2011) (unpublished memorandum) ("Direct Appeal"). On December 28, 2011, the Pennsylvania Superior Court denied Petitioner's appeal. *Id.* at 19. Petitioner sought allocatur and on August 17, 2012, the Pennsylvania Supreme Court denied same. *Commonwealth v. Ayala*, 40 A.3d 204 (Pa. Super. Dec. 28, 2011) (unpublished memorandum), *appeal denied*, 50 A.3d 124 (Pa. 2012).

In October 2012, Petitioner timely filed a counseled petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S. §§ 9541 *et seq*. Petitioner alleged, among other allegations, that precluding Agent Galambos' fact testimony deprived him of his due process right to present a complete defense. (PCRA Pet. 36, 54.) Petitioner also

4

alleged that trial counsel was ineffective for failing to object to "testimony that several authority figures concluded that Complainant M.R. was credible, invading the province of the fact finder." (PCRA Pet. 36, 54.) On October 21, 2013, the PCRA court denied Petitioner's due process claim as previously litigated and his ineffectiveness claim as meritless. *Commonwealth v. Ayala*, 3547 EDA 2013, at 7, 16 (Pa. Com. Pl. June 13, 2014) ("PCRA Opinion") Petitioner filed a timely appeal with the Pennsylvania Superior Court on January 20, 2015, and the Superior Court affirmed in part, reversed in part, and remanded for further proceedings. *Commonwealth v. Ayala*, No. 3547 EDA 2013, 2015 Pa. Super. Unpub. LEXIS 60 (Pa. Super. Jan. 20, 2015) ("PCRA Appeal"). On May 15, 2015, the remanded claims were dismissed. Petitioner took another timely appeal to the Superior Court, but elected to discontinue same on July 20, 2015.

### ii. Habeas Review

In accordance with 28 U.S.C. § 2254, Petitioner timely filed a counseled habeas action in federal court on December 18, 2015 ("§2254 Petition"). Petitioner's grounds for relief are as follows:

1. The trial court's decision to preclude Galambos' testimony deprived Petitioner of his due process right to present a defense at trial; and,

2. Ineffective assistance of counsel occurred when counsel failed to object to "testimony that several authority figures concluded that M.R. was credible, invading the province of the fact finder."

(§ 2254 Pet. 34, 47.)

In response, the Pennsylvania Attorney General and Philadelphia District Attorney argued that Petitioner's claims were all without merit.

On November 22, 2016, United States Magistrate Judge Timothy R. Rice issued a Report and Recommendation ("R&R"), in which he recommended dismissal of all of the claims presented by Petitioner. As referenced above, Petitioner has objected to each issue ruled upon by

5

Judge Rice. The Commonwealth has responded to Petitioner's Objections and the matter is now ripe for review by this Court.

### III. Standards of Review

#### A. Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the district court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. §636(b)(1). If there are no objections to the R&R, or when reviewing those portions of the R&R to which no objections are directed, the court, as a matter of good practice, should "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel,* 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection . . . this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

#### B. Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition. These procedures were enacted to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court.") (citing 28 U.S.C. § 2254(b)(1)). To accomplish this, federal habeas claims must first be "fairly presented" to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). A claim is deemed "fairly presented" when its "factual and legal substance" is put before the state courts "in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The burden of proving exhaustion always rests with the petitioner. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or, that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply

7

with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, the "prejudice" element requires the "petitioner [to] prove 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 193 (quoting (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### C. Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "While a factual determination by a state court is presumed to be correct under 28 U.S.C. § 2254(e)(1), a petitioner may rebut this presumption by clear and convincing evidence." *Sileo v. Rozum*, Civ. No. 12-3803, 2015 U.S. Dist. LEXIS 158463, at *52 (E.D. Pa. Nov. 23, 2015). Additionally, when a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

### D. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish that: (1) counsel's performance was constitutionally deficient; and, (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

## IV. Discussion

### A. The trial court's decision regarding Agent Galambos' proffered testimony did not constitute a deprivation of Petitioner's due process rights.

Petitioner's first objection pertains to the trial court's ruling regarding the proffered testimony of Immigration and Customs Enforcement Agent Steven Galambos. (§ 2254 Pet. 34; Obj. at 2.) Specifically, Petitioner alleges in his § 2254 Petition that the exclusion of Agent Galambos' testimony reduced his constitutional due process right to produce a complete defense. Petitioner sought to present Agent Galambos as a fact witness to undercut the credibility of M.R.'s testimony that Petitioner had unlawful sexual conduct with her twice a week. Agent Galambos would have testified that, "he worked with him as a confidential informant and that he

9

was at Agent Galambos' beck and call." (Trial Tr. vol. 1, 36-38, July 6, 2009.) Petitioner argues this testimony would have demonstrated that because of his time commitment to Agent Galambos, it would have been impossible for him to commit the illegal sexual acts charged by the Commonwealth. (Objs. at 2.)

Although the trial court precluded Galambos from testifying as a fact witness, it did permit him to testify as a character witness. (Trial Tr. vol. 1, 35, July 6, 2009.) When presented on appeal, the Pennsylvania Superior Court rejected Petitioner's due process argument, finding "Agent Galambos would have been unable to offer a true alibi defense for [Ayala], where the sexual abuse took place over the course of many years. We see no reason to disturb the court's decision to limit Agent Galambos' testimony to character evidence." (Direct Appeal at 17.)

In his habeas petition, Petitioner argues that all of the reviewing courts have made the mistake of treating Agent Galambos as an alibi witness, rather than as an individual providing information to "undercut the testimony of complainants by demonstrating how unlikely their versions of events were in light of the fact that petitioner was at the sudden and unannounced beck and call of Agent Galambos to perform informant services at all hours of the day." (Objs. at 2.)

It is clear that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *United States v. Perez*, 459 F. App'x 191, 197 (3d Cir. 2012) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326 – 327 (2006)).

> Thus, federal law requires this Court to defer to a state court's application of its own rules of evidence. *Estelle*, 502 U.S. at 67-68 (federal court on habeas review must not review state court rulings on admissibility of evidence under state law); *see also Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) ("State and federal rulemakers have broad latitude under the Constitution to establish rules

> excluding evidence from criminal trials."); *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules.").
>
> The admission or exclusion of evidence is within the sound discretion of the trial court, *Scales v. United States*, 367 U.S. 203, 256, 81 S. Ct. 1469, 6 L. Ed. 2d 782 (1961), and such "discretionary rulings regarding the admissibility of evidence are. . . best left to the province of the trial judge." *Yohn v. Love*, 76 F.3d 508, 525 (3d Cir. 1996).

*Nalls v. Pennsylvania*, Civ. No. 13-031, 2014 U.S. Dist. LEXIS 28747, at *18-19 (W.D. Pa. Feb. 12, 2014).

In this case, the trial court properly excluded Agent Galambos' testimony as irrelevant because Petitioner's work with Agent Galambos would not have made it impossible for him to engage in the illegal activity. Petitioner began working for Agent Galambos in 2004. (Trial Jr. vol. 1, 32, June 25, 2009.) M.R. testified that the abuse she suffered from Petitioner began in 2002. (Trial Jr. vol. 1, , 94-95, June 29, 2009.) Therefore, even if Petitioner was at the "beck and call" of Agent Galambos, there is a two year period of unaccounted-for time between commencement of the alleged abuse and commencement of Petitioner's work for Agent Galambos. The proffered testimony of Agent Galambos would not demonstrate that it was impossible for Petitioner to engage in the illegal conduct, as any reasonable person could conclude that Petitioner was capable of conducting the illegal acts prior to Petitioner's association with Agent Galambos in 2004.

The trial court did not err in ruling that portions of Agent Galambos' proffered testimony were not relevant. The Constitution permits state courts to make such decisions. *See Holmes* at 326-327. Giving deference to the state court's ruling, this Court finds not only that Agent Galambos' proffered testimony was marginally relevant, but also, that the court's ruling did not

run afoul of Petitioner's constitutionally protected rights. Accordingly, Petitioner's first objection shall be overruled.

### B. Ineffectiveness

Petitioner's second objection contests the Magistrate Judge's decision to give deference to the trial court's ruling pertaining to admitted witness testimony. (§ 2254 Pet. 47; Objs. at 3.) At the outset, Petitioner maintains that trial counsel provided ineffective assistance by failing to object when: (1) M.R. testified that she did not think Officer Monzo believed her attempt to recant; (2) M.R.'s school's guidance counselor testified that she did not believe M.R.'s recantation; (3) Officer Monzo read into the record M.R.'s statement that M.R. did not think her guidance counselor, boyfriend, boyfriend's mother, or DHS social worker believed her recantation; and, (4) M.R.'s DHS social worker testified that M.R. was removed from her mother's home and placed with a relative. (§ 2254 Pet. 47-48.) The PCRA court rejected Petitioner's argument, finding C.R. and C.S.'s testimony "corroborated the testimony of MR…[and] was relevant and admissible and was more than sufficient to sustain the jury's verdict…." (PCRA Op. 7.) Petitioner further complains that the Magistrate erred in giving deference to the PCRA court's ruling. (Objs. at 3.) Because witness credibility is a function solely within the province of the jury and because the Magistrate did not err in giving deference to the PCRA ruling, Petitioner's second objection shall be overruled.

In assessing Petitioner's claims on initial review, the PCRA court correctly applied the *Strickland* standard in conjunction with the mandates of § 2254:

> Where, as here, the petitioner claims that his counsel had been ineffective . . . the assessment of trial counsel's judgment requires another layer of deference: we are "required not simply to give [the] attorney[ ] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did." *Cullen v. Pinholster*, U.S. , , 131 S. Ct. 1388, 1407, 179 L. Ed. 2d 557 (2011) (first alteration in original) (internal

> quotation marks and citation omitted). Thus, the nexus of the AEDPA and *Strickland* compels us to be "doubly deferential," and "give[] both the state court and the defense attorney the benefit of the doubt." *Burt*, U.S. at , 134 S. Ct. at 13 (quoting *Pinholster*, U.S. at , 131 S. Ct. at 1403).

*Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) ("federal courts are to afford both the state court and the defense attorney the benefit of the doubt.") (internal quotations and citations omitted); *Saranchak v. Sec' y, Pa. Dep't of Corr.*, 802 F.3d 579, 593 (3d Cir. 2015) ("[W]e apply a 'doubly deferential standard,' both as to whether counsel's conduct was reasonable, as well as to the Pennsylvania Supreme Court's treatment of the issue.") (citing *Breakiron v. Horn*, 642 F.3d 126, 141-142 (3d Cir. 2011)). In this case, the Magistrate properly reviewed Petitioner's ineffective assistance of counsel claim under a doubly deferential standard and correctly determined that counsel did not provide ineffective assistance of counsel.

This Court further notes that the basis upon which Petitioner bases his ineffectiveness objection pertains to witness credibility—a function that is within the province of the jury. In any event, this Court shall address each subpart of Petitioner's objection in turn.

First, Petitioner argues that the aforementioned statements caused prejudice because they undermined evidence that suggested M.R. and other complainants lied. (Objs. at 3-4.) After the Magistrate adopted the PCRA's ruling, Petitioner supplemented this argument in his objection. (Objs. at 3-4.) Petitioner complains that in adopting CR's and CS's statements, the PCRA court allegedly ignored all evidence that undermined the credibility of the complainant's testimony. (Objs. at 3-4.) This Court's review of the record clearly demonstrates otherwise. "It is a basic tenet of the jury system that it is improper for a district court to 'substitute [ ][its] judgment of the facts and the credibility of the witnesses for that of the jury.'" *United States v. Haut*, 107 F.3d 213, 220 (3d Cir. 1997) (quoting *Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir. 1960)).

Every piece of evidence that Petitioner asks this Court to consider (§ 2254 Pet. 26-30, 48), speaks to witness credibility; a determination of which is a function solely within the province of the jury. As Magistrate Judge Rice correctly recognized, "[a]lthough the Superior Court relied primarily on the testimony from C.R. and C.S. for its decision, it also adopted the PCRA court's discussion about additional fact witnesses and jury instructions regarding witness credibility." (R&R, 11 n.11.) The PCRA court properly took into account all evidence put forth and left the credibility of such witnesses to the jury. Thus, the Magistrate did not err in giving that decision deference. This Court finds Petitioner's argument unavailing.

Petitioner next argues that the Magistrate improperly failed to consider Petitioner's argument that "*Strickland's* prejudice test of a 'reasonable probability of a different verdict' does not require petitioner to prove that absent counsel's error he would have been acquitted of all charges." (Objs. at 4-5.) Petitioner similarly argues that the Magistrate improperly failed to consider Petitioner's argument that, had the jury not heard the testimony "bolstering" M.R.'s credibility, "who knows how the jury would have viewed the testimony of the other complainants." (Objs. at 5.) Petitioner's claims are unfounded.

Magistrate Judge Rice responded to Petitioner's "reasonable probability of a different verdict" argument by stating, "[petitioner] fails to support his claim with any citation to the Superior Court's decision, and my independent review of the record establishes the Superior Court never applied such a standard." (R&R, 11 n.10.) Upon independent review of the record, this Court finds the Superior Court applied the proper standard, which "places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Applying this standard, the record is devoid of any indication of a reasonable

probability that the result in this case would have been different. Petitioner's only argument is that, "the bolstering testimony of all these authority figures served to dilute the power of M.R.'s many recantations and admissions of lying" and that had counsel objected to such testimony, "it is reasonably likely one or more jurors would have found reasonable doubt about M.R.'s credibility." (§ 2254 Pet. 33.)

Again, this argument pertains to the credibility of witness testimony and assumes that the jurors would have credited M.R.'s testimony any less if they were not allowed to hear the contested testimony. "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.'" *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (citing *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added)). Petitioner provides no evidence of record to demonstrate the probability that had counsel objected, the result would have been different. Instead, the properly adduced testimony of three separate victims articulating the same sexually deviant nature of Petitioner, overwhelmingly demonstrates the correctness of the verdict. (Trial Jr. vol. 1, 160-188, Jun 30, 2009; Trial Jr. vol. 1, 183-217, Jul 01, 2009.) Because M.R.'s credibility was a determination for the jury, who assessed same in conjunction with other overwhelming evidence of Petitioner's guilt, there is no legitimate basis for Petitioner's assertion that the result of his case would have been any different, had counsel objected to the testimony at issue.

Lastly, Petitioner argues that the Magistrate erred in considering Co-defendant Maria Alfaro's confession as incriminating evidence against Petitioner. (Objs. at 5.) Specifically, Petitioner argues that under *Bruton v. United States*, 391 U.S. 123 (1968), any co-defendant's confession that incriminates Petitioner should not be admitted into evidence. (Objs. at 5.)

15

"In *Bruton,* the Court held that the Confrontation Clause bars the use of the confession of a nontestifying criminal defendant in a joint trial to the extent that it directly inculpates a co-defendant, though it might be otherwise admissible against the confessing defendant." *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) (citing *Bruton*, 391 U.S. at 126). "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." *Crawford v. Washington,* 541 U.S. 36, 59 n.9 (2004) (citing *California v. Green,* 399 U.S. 149, 162 (1970)). Here, Petitioner's argument fails to account for the fact that Co-defendant Alfaro testified and was available for cross-examination. Accordingly, the confession was properly admitted by the court and considered by the jury. The Magistrate's determination on this issue was proper and Petitioner's objection is without merit.

## V.  Conclusion

For the reasons set forth hereinabove, Petitioner's Objections shall be overruled.  An appropriate Order follows.

BY THE COURT:


 /s/  C. Darnell Jones, II        J.